UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NELSON BROWN,
                           Plaintiff,
    vs.                                         9:11-CV-647
                                                          (MAD/ATB)
BULLIS, et al.,
                           Defendants.
_____

NELSON BROWN, Plaintiff *pro se*
CHRISTOPHER W. HALL, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred for Report and Recommendation by U.S. District Judge Mae A. D'Agostino, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). In his civil rights complaint, plaintiff alleges violations of due process, conspiracy, and retaliation related to a Tier III hearing. (Am. Compl., Dkt. No. 9). Plaintiff seeks substantial monetary damages. (*Id.*). Defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 24). Plaintiff opposed defendants' motion. (Dkt. No. 26). Defendants argue in their motion that (1) all of plaintiff's claims are time-barred; (2) defendant Nurse Smith is entitled to absolute immunity; (3) the conspiracy claim fails to state a cause of action; (4) the claims against defendants in their official capacities should be dismissed under the 11th Amendment; and (5) the retaliation claim fails to state a cause of action. (Defs.' Memo. of Law at 1, Dkt. No. 24-1).

On January 7, 2013, this court converted defendants' motion to dismiss to one for summary judgment as to the issue of the statute of limitations and equitable tolling, giving plaintiff and defendants until January 25, 2013, to file any additional pertinent information. (Dkt. No. 34). Plaintiff filed a response on January 22, 2013. (Dkt. No. 35). Defendants did not file any further argument. This court agrees that plaintiff's claims are time-barred. Accordingly, this court recommends that defendants' motion for summary judgment be granted, and plaintiff's case be dismissed in its entirety.

## DISCUSSION

### I. BACKGROUND

Prior to the misbehavior report that resulted in the Tier III hearing in question, plaintiff had received two other misbehavior reports, one on January 24, 2008, and one on February 26, 2008. (Am. Compl. 15–19). Each misbehavior report was issued because plaintiff refused to provide a urine sample. (*Id.*). At two separate Tier III hearings, the two prior misbehavior reports were dismissed after the hearing officer found that plaintiff was having problems urinating due to a medical condition. (*Id.*).

On April 1, 2008, plaintiff received a third misbehavior report for failing to provide a urine sample. (Am. Compl. 20). At his April 3, 2008 Tier III disciplinary hearing, plaintiff requested that the doctor who prescribed his medication be called as witness. (Am. Compl. 23). Instead, defendant Hearing Officer Bullis called defendant Nurse Smith, who had access to plaintiff's medical chart, to testify at the hearing. (*Id.*). Plaintiff was found guilty and sentenced to 12 months in the Special Housing

Unit ("SHU"), 12 months loss of various privileges, and 12 months loss of good time.[1] (Am. Compl. 21).

Plaintiff claims that defendant Hearing Officer Bullis violated plaintiff's due process rights at the April 3 hearing when he failed to call plaintiff's preferred witness, and when he refused to consider certain documentary evidence. (Am. Compl. 4). Plaintiff also names defendant Bezio in this action because on May 23, 2008, as the director of the Special Housing/Inmate Disciplinary Program, he affirmed defendant Bullis's decision. (Am. Compl. 34). Plaintiff claims that defendant Nurse Smith intentionally testified falsely when she stated that there was nothing wrong with plaintiff, and that nothing in his medical record indicated that he was unable to urinate. (Am. Compl. 8). Plaintiff claims that he was found guilty because of a conspiracy between defendants Sergeant Gill[2] and Hearing Officer Bullis. (Am.

---

[1] Plaintiff states that he waives any consideration of good time. (Am. Compl. 5). With some exceptions, *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), prevent challenges to prison disciplinary proceedings in section 1983 actions where there has been a loss of good time. In his amended complaint, plaintiff also states, "Plaintiff is serving a life sentence [and] thereby [sic] isn't eligible for any good time and in any event doesn't challenge any good time matters." (Am. Compl. 5). The court notes that because plaintiff is serving a life sentence, any loss of good time would not affect the length of his sentence. *See Tafari v. Rock*, No. 10-CV-729, 2012 U.S. Dist. LEXIS 54659, at *3, 2012 WL 1424725 (W.D.N.Y. Apr. 24, 2012) (citing N.Y. Corr. Law § 803(1)(a); *Bressette v. Travis*, 240 A.D.2d 838, 828 (3d Dept. 1997)). Since plaintiff cannot get or lose good time, *Heck* and *Edwards* do not apply, because a decision in his favor would not change the length of his confinement. In addition, even if plaintiff were not ineligible to get good time, his waiver of the right to challenge the good time would allow him to have the merits of his claim considered. *See Peralta v. Vasquez*, 467 F.3d 98, 104–106 (2d Cir. 2006).

[2] Sergeant Gill allegedly put in the requests for plaintiff to provide urine samples on January 24, 2008, February 26, 2008, and April 1, 2008. (Am. Compl. 8). Plaintiff alleges that after plaintiff's second misbehavior report was dismissed, Sergeant Gill told plaintiff that he "guaranteed" it would not be dismissed the next time. (Am. Compl. 6–7).

3

Compl. 8).

On September 17, 2009, more than one year after defendant Bezio affirmed the hearing decision, plaintiff, with the assistance of Prisoners' Legal Services of New York, requested that defendant Bezio reconsider his decision affirming the disciplinary finding, but plaintiff's request was denied on November 25, 2009. (Am. Compl. 35–37).

## II. APPLICABLE LAW

### A. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467

F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

### B. Statute of Limitations

#### 1. Legal Standards

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir.

5

1997).

   2. **Application**

In this case, plaintiff is challenging the determination of a prison disciplinary proceeding. (Am. Compl. 21). Plaintiff filed an appeal of that hearing on April 9, 2008, and on May 23, 2008, the sentence was affirmed. (Am. Compl. 34). At this point, plaintiff's administrative appeals were concluded and the statute of limitations began to run. *See Abbas*, 480 F.3d at 641 (administrative decision became final when inmate had no additional administrative steps available to fight the disciplinary charges).

On September 17, 2009, plaintiff, with help from Prisoner's Legal Services of New York, requested that defendant Director Bezio reconsider the appeal, and the request was denied on November 25, 2009. (Am. Compl. 35–37). Plaintiff could argue that the statute of limitations should be tolled for the period between his request for reconsideration and defendant Bezio's denial. In *Abbas*, the Second Circuit held that the filing of a discretionary Article 78 petition after the completion of administrative proceedings did not toll the limitations period. 480 F.3d at 641. The Second Circuit stated that, for purposes of the statute of limitations: "the discretionary reconsideration and reversal of a disciplinary decision does not restart the statute of limitations unless a new hearing is ordered and new evidence is received." *Id*.

In this case, plaintiff's request for reconsideration was not part of the administrative appeal process, and like the discretionary Article 78 proceeding, did not toll the statute of limitations. Thus, the statute of limitations began to run on May

23, 2008, the date that defendant Bezio affirmed the disciplinary finding, and plaintiff was aware of the basis for his federal constitutional claims. On May 23, 2011, three years from May 23, 2008, the statute of limitations expired.

The complaint was signed by plaintiff on June 6, 2011, and was filed with the District Court on June 10, 2011. The earliest that plaintiff could have given his complaint to the prison for mailing[3] was June 6, 2011, which is beyond the May 23 expiration of the statute of limitations. As a result, plaintiff's claims are time-barred unless the limitations period was otherwise tolled.

### B. Equitable Tolling

#### 1. Legal Standards

The doctrine of equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). In order to apply equitable tolling, the court must find that "extraordinary circumstances" prevented the plaintiff from performing the required act, and that plaintiff acted "with reasonable diligence" during the period that he seeks to toll. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 159 (2d Cir. 2004)).

---

[3] The court looks to this date due to the prison mailbox rule. The Supreme Court has held that an inmate's papers may be deemed "filed" at the moment of delivery to prison authorities for forwarding to the district court. *Houston v. Lack*, 487 U.S. 266 (1988). This rule became known as the "prison mailbox rule," and has been applied to inmates filing complaints for purposes of the statute of limitations. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir. 1994).

Routine experiences of prison life do not qualify as extraordinary circumstances. *See Colon v. Goord*, No. 98-CV-1302, 2008 U.S. Dist. LEXIS 119222, at *28–31 (N.D.N.Y. May 20, 2008) (Report and Recommendation finding that delay in typing prisoner's complaint due to initial illegibility of the prisoner's handwriting, the transfer of an inmate typist to another facility, the occurrence of a one-week "lock down," the length of the complaint and ratio of inmate law clerks to prisoners requesting typing services did not constitute "extraordinary circumstances" for the purposes of equitable tolling in a § 1983 case). Other courts have found that "solitary confinement, lock-downs, and restricted access to the law library do not qualify as 'extraordinary circumstances' warranting equitable tolling." *Belot v. Burge*, 03-CV-1478, 2005 U.S. Dist. LEXIS 45386, at *19, 2005 WL 6777981 (S.D.N.Y. July 14, 2005) (collecting cases). In addition, "transfers between prison facilities, solitary confinement, lock-downs, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances." *Hardy v. Conway*, 299 F. Supp. 2d 159, 161 (E.D.N.Y. 2004) (vacated on other grounds, No. 04-0934, 162 Fed. App'x 61 (2d Cir. Jan. 12, 2006); *see also Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D.N.Y. 2002) ("Transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances.")

Courts have applied equitable tolling "only in 'rare and exceptional circumstances.'" *Id*. The plaintiff bears the burden of showing that the action was brought within a reasonable period of time. *Abbas v. Dixon*, 480 F.3d 636, 642. If a

plaintiff cannot "articulate any acts by defendants that prevented him from timely commencing suit" then he has "failed to meet his burden of showing that he was wrongfully induced by defendants not to commence suit." *Id.* (internal alterations omitted).

### 2. Application

Plaintiff acknowledges that his complaint is untimely in a letter to the court supporting his amended complaint dated October 3, 2011, where he states several reasons for his failure to file his complaint on time. (Dkt. No. 10). Plaintiff states that he was transferred from Upstate Correctional Facility ("Upstate") on April 18, 2011, and did not file his complaint while he was at Upstate due to a fear of being "targeted." (*Id.*). Plaintiff claims that he filed his complaint as soon as his paperwork was given to him after his transfer out of Upstate. (Dkt. No. 10).

Plaintiff explained that when he was transferred from Upstate Correctional Facility, he stayed at Downstate Correctional Facility until April 21, 2011, when he was transported to Auburn Correctional Facility ("Auburn"). (*Id.*). After arriving at Auburn, he was placed in isolation until May 17, 2011, because he was accused of possessing a weapon and drugs. (*Id.*; *see also* Dkt. No. 35 at 2). Plaintiff claims he did not receive the letter from Upstate about his property until May 19, 2011, when he was released from isolation, and it was only then that he could arrange to have his property shipped to him at Auburn, which was after the statute of limitations had expired. (*See* Dkt. No 9-1 at 4, Dkt. No. 9-2 at 1).

None of the reasons outlined by plaintiff sufficiently suggest that defendants

prevented him from filing a timely action, wrongfully induced him not to file a timely action, or that he acted with due diligence throughout the period to be tolled. Plaintiff had three years, beginning at the denial of his appeal on May 23, 2008, to file a complaint. Plaintiff's claim that he "feared reprisal" and was therefore waiting to be transferred before filing a complaint is insufficient to warrant equitable tolling. Plaintiff diligently appealed the determination of his Tier III hearing and contacted Prisoners' Legal Services of New York, whose resulting letter for reconsideration on plaintiff's behalf was denied. All of these activities were completed by November 29, 2009, *while plaintiff was still at Upstate*. (*See* Compl. at 37). Thus plaintiff's argument that he feared "reprisal" while at Upstate is clearly without merit. Additionally, there is no indication that plaintiff knew for sure when he was going to be transferred out of Upstate. Such an argument would have allowed an indefinite tolling of the limitations period. Additionally, plaintiff's transfer out of Upstate and subsequent stay in Auburn do not constitute an extraordinary circumstance.

Plaintiff has shown nothing that indicates due diligence related to his section 1983 action. A general fear of "reprisal" while he was at Upstate is insufficient to warrant equitable tolling, particularly because that fear was not sufficient to deter his administrative appeals or his request to Prisoners' Legal Services of New York for help in 2009. Plaintiff apparently did nothing related to his section 1983 claim from November 29, 2009, until after the statute of limitations expired in 2011. Plaintiff has not made the necessary showing to qualify for equitable tolling, and his complaint should therefore be dismissed in its entirety.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED** and the Amended Complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 4, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge