**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**NELSON BROWN,**

        **Plaintiff,**

 vs.              **9:11-CV-647
                   (MAD/ATB)**

**BULLIS, Commissioners Hearing Officer,
Individual and Official Capacity; NORMAN R.
BEZIO, Director Special Housing/Inmate Disciplinary
Program, Individual and Official Capacity; SGT.
GILL, Sgt. Upstate Correctional Facility, Individual and
Official Capacity; SMITH, Nurse, Upstate Correctional
Facility, Individual and Official Capacity,**

        **Defendants.**
_____

**APPEARANCES:**          **OF COUNSEL:**

**NELSON BROWN
97-A-6402**
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**    **CHRISTOPHER W. HALL, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

  Plaintiff commenced this civil rights action on June 6, 2011, which was filed with the Court on June 10, 2011. *See* Dkt. No. 1. Plaintiff alleges violations of due process, conspiracy, and retaliation related to a Tier III disciplinary hearing. *See* Dkt. No. 9.

Prior to the misbehavior report that resulted in the Tier III hearing in question, Plaintiff had received two other misbehavior reports – one on January 24, 2008, and one on February 26, 2008. *See* Dkt. No. 9 at 15-19. Each misbehavior report was issued because Plaintiff refused to provide a urine sample. *See id.* At two separate Tier III hearings, the two prior misbehavior reports were dismissed after the hearing officer found that Plaintiff was having problems urinating due to a medical condition. *See id.*

On April 1, 2008, Plaintiff received a third misbehavior report for failing to provide a urine sample. *See id.* at 20. At his April 3, 2008 Tier III disciplinary hearing, Plaintiff requested that the doctor who prescribed his medication be called as a witness. *See id.* at 23. Instead, Defendant Bullis called Defendant Smith, who had access to Plaintiff's medical chart, to testify at the hearing. *See id.* Plaintiff was found guilty and sentenced to twelve (12) months in the Special Housing Unit ("SHU"), twelve (12) months loss of various privileges, and twelve (12) months loss of good time. *See id.* at 21.

Plaintiff claims that Defendant Bullis violated his due process rights at the April 3 hearing when he failed to call Plaintiff's preferred witness, and when he refused to consider certain documentary evidence. *See id.* at 4. Plaintiff also names Defendant Bezio in this action because on May 23, 2008, as the director of the Special Housing/Inmate Disciplinary Program, he affirmed Defendant Bullis' decision. *See id.* at 34. Plaintiff claims that Defendant Smith intentionally testified falsely when she stated that there was nothing wrong with Plaintiff, and that nothing in his medical record that he was unable to urinate. *See id.* at 8. Plaintiff claims that he was found guilty because of a conspiracy between Defendants Gill and Bullis. *See id.* at 8.

On September 17, 2009, more than one year after Defendant Bezio affirmed the hearing decision, Plaintiff, with the assistance of Prisoners' Legal Services of New York, requested that

Defendant Bezio reconsider his decision affirming the disciplinary finding. *See id.* at 35-37. On November 25, 2009, Plaintiff's request was denied. *See id.*

Plaintiff commenced this action on June 6, 2011.[1] *See* Dkt. No. 1. On March 12, 2012, Defendants filed a motion to dismiss the amended complaint, arguing that, (1) the claims are time-barred; (2) Defendant Smith has immunity for testifying at the Tier hearing; (3) Plaintiff's conspiracy claim fails to state a cause of action; (4) Plaintiff's official capacity claims are barred by the Eleventh Amendment; and (5) Plaintiff's retaliation claim fails to state a cause of action. *See* Dkt. No. 24-1. On January 7, 2013, Magistrate Judge Baxter converted the motion to dismiss to one for summary judgment solely as to the issue of the statute of limitations and equitable tolling, giving Plaintiff and Defendants until January 25, 2013, to file any additional pertinent information. *See* Dkt. No. 34. On January 22, 2013, Plaintiff filed a response. *See* Dkt. No. 35. Defendants did not submit any supplemental filings.

In a February 4, 2013 Report-Recommendation, Magistrate Judge Baxter recommended that the Court grant Defendants' motion for summary judgment. *See* Dkt. No. 36. Specifically, Magistrate Judge Baxter found that Plaintiff's claims were filed after the three-year statute of limitations had expired, and that Plaintiff failed to provide any reasons sufficient to warrant the application of equitable tolling. *See id.* at 9-10.

Currently before the Court are Magistrate Judge Baxter's Report-Recommendation and Plaintiff's objections thereto.

---

[1] Pursuant to the "prison mailbox rule," Plaintiff's complaint is deemed "filed" at the moment of delivery to prison officials (the date the complaint was signed), not the date it was actually received by the Court, which was June 10, 2011. *See Houston v. Lack*, 487 U.S. 266 (1988).

## II. DISCUSSION

**A.   Conversion of Defendants' motion to dismiss into a motion for summary judgment**

A district court may convert a motion to dismiss under Rule 12(b)(6) into a summary judgment motion under Rule 56 if the court gives "sufficient notice to an opposing party and an opportunity for that party to respond." *Malaney v. Elal Israel Airlines*, 331 Fed. Appx. 772, 774 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)); *see also* Fed. R. Civ. P. 12(d). When a party is proceeding *pro se*, notice is particularly significant because *pro se* litigants may be unaware of the consequences that may result for failing to offer evidence bearing on triable issues. *See Wali v. Chelsea Plastics*, 351 Fed. Appx. 547, 548 (2d Cir. 2009). Such notice must be "unequivocal" as to the meaning and consequences of a summary judgment motion. *See Hernandez v. Coffey*, 582 F.3d 303, 308-09 (2d Cir. 2009).

In the present matter, Magistrate Judge Baxter properly converted Defendants' motion to dismiss into a motion for summary judgment as to Defendants' statute of limitations and equitable tolling arguments. Magistrate Judge Baxter provided Plaintiff time to submit any additional material or arguments in support of his position and Plaintiff availed himself of that opportunity. *See* Dkt. No. 35.

As such, the Court finds that Magistrate Judge Baxter properly converted Defendants' motion to dismiss into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.

**B.   Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c). (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2502, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in

the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (qquoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**C.   Statute of limitations**

"A three-year statute of limitations applies to section 1983 actions filed in federal courts in New York." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 560 (E.D.N.Y. 2011) (citation omitted). Moreover, such a claim accrues when the plaintiff "knew or had 'reason to know of the injury that is the basis of the action[.]'" *Sterngass v. Palisades Interstate Park Com'n*, 260 Fed. Appx. 395, 395 (2d Cir. 2008) (quoting *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003)). Although federal law determines when a section 1983 claim accrues, state tolling

rules determine whether the limitations period has been tolled. *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997) (citation omitted).

In the present matter, Plaintiff is challenging the determination of a prison disciplinary preceding. *See* Dkt. No. 9 at 21. Plaintiff filed an appeal of that hearing on April 9, 2008, and the hearing determination was affirmed on May 23, 2008. *See id.* at 34. As such, the statute of limitations began to run on May 23, 2008 because Plaintiff had no additional administrative remedies to pursue. *See Abbas*, 480 F.3d at 641. Although Plaintiff filed a request that Defendant Bezio reconsider the appeal on September 17, 2009, because the request for reconsideration was denied, Plaintiff request for reconsideration of the disciplinary decision does not toll the statute. *See id.* (holding that the filing of an Article 78 petition seeking "the discretionary reconsideration and reversal of a disciplinary decision" does not restart or toll the statute of limitations unless a new hearing is ordered an new evidence is received as a result of the petition).

Since Plaintiff's request for reconsideration did not toll the running of the statute of limitations, it began to run on May 23, 2008, *i.e.*, the date that Defendant Bezio affirmed the disciplinary finding. Therefore, as Magistrate Judge Baxter correctly found, unless equitable tolling applies, the statute of limitations expired on May 23, 2011. *See* Dkt. No. 36 at 7. Since Plaintiff's complaint is dated June 6, 2011, which is considered the date of filing for purposes of the prison mailbox rule, Plaintiff's complaint is untimely.

**D.    Equitable tolling**

In rare cases, the principle of equitable tolling may prolong the allowable time for filing a complaint under section 1983. *See Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)

7

(quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)). To obtain the benefit of equitable tolling, a plaintiff must demonstrate that "'extraordinary circumstances' prevented a party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [sought] to toll.'" *Id.* (quotation omitted); *see also Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir.1996) (noting that the Second Circuit has applied equitable tolling doctrine "'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights, or h[as] asserted his rights in the wrong forum'") (quotation omitted).

Routine experiences of prison life do not qualify as extraordinary circumstances. *See Gant v. Goord*, 430 F. Supp. 2d 135, 139 (W.D.N.Y. 2006) (citation omitted). Courts have found that "solitary confinement, lock-downs, and restricted access to the law library do not qualify as 'extraordinary circumstances' warranting equitable tolling." *Belot v. Burge*, No. 03-CV-1478, 2005 WL 6777981 (S.D.N.Y. July 14, 2005) (collecting cases); *see also Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D.N.Y. 2002) (holding that "[t]ransfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances").

"'The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff,' and courts are 'less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.'" *Avillan v. Potter*, No. 01 CIV 1648, 2002 WL 252479, *3 (S.D.N.Y. Feb. 21, 2002) (citations omitted); *see also Abbas*, 480 F.3d at 642 ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim 'have ceased to be operational'"). "To show that extraordinary circumstances 'prevented' him from filing his [complaint] on time," the plaintiff must show that there was a causal relationship between the

8

extraordinary circumstances claimed and the lateness of the filing, "'a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'" *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (quotation omitted).

In the present matter, Plaintiff concedes that his action is untimely, but argues that the statute of limitations should be tolled because of "extraordinary circumstances." In his objections to Magistrate Judge Baxter's Report-Recommendation, Plaintiff claims that from April 18, 2011 until May 17, 2011, while at Auburn C.F. he was placed in a "Special Watch Cell" or "isolation" in the hospital which he claims is different from being placed in the SHU or lockdown. *See* Dkt. No. 37 at 1. Plaintiff claims that, during this time, he was stripped of his clothes, only allowed to wear hospital pajamas, with no underwear, t-shirt, or socks. *See id.* Further, Plaintiff claims that, during this time, he was not allowed to have anything in his cell with him other than his bedframe. *See id.* at 1-2. Moreover, Plaintiff claims that, when he had to use the bathroom, officers would observe him to ensure that he had no contraband. *See id.* at 2. Plaintiff also asserts that, while held in isolation, he was unable to send any mail. *See* Dkt. No. 35 at 2. Plaintiff claims that he was held in "isolation" for twenty-six (26) days in violation of DOCCS directive 4910. *See* Dkt. No. 37 at 2.

Further, Plaintiff claims that, during this time, which was immediately prior to his transfer from Upstate C.F. to Attica C.F., all of his property was sent to Attica C.F., with the exception of a single bag, which contained his legal material. *See id.* Plaintiff also claims that he feared for his safety while at Upstate C.F., which he seems to imply deterred him from filing this action while housed there. *See id.* at 3. Finally, Plaintiff contends that he acted with reasonable diligence in pursuing his rights because he did not become aware of the fact that his rights had

9

been violated until February of 2011 when another inmate told him about his potential due process claim. *See id.*

As Magistrate Judge Baxter correctly determined, none of the reasons outlined by Plaintiff sufficiently suggest that Defendants prevented him from filing a timely action, wrongfully induced him not to file a timely action, or that he acted with due diligence throughout the period to be tolled. *See* Dkt. No. 36 at 10. Plaintiff had three years, beginning at the denial of his appeal on May 23, 2008, to file his complaint. Magistrate Judge Baxter properly noted that "Plaintiff's claim that he 'feared reprisal' and was therefore waiting to be transferred before filing a complaint is insufficient to warrant equitable tolling. Plaintiff diligently appealed the determination of his Tier III hearing and contacted Prisoners' Legal Services of New York, whose resulting letter for reconsideration on Plaintiff's behalf was denied. All of these activities were completed by November 29, 2009, *while [P]laintiff was still at Upstate.*" *See id.* (emphasis in original).

Further, Plaintiff failed to demonstrate that he acted with due diligence during the period to be tolled. From November 29, 2009 until June of 2011, Plaintiff apparently did nothing related to his section 1983 action. In light of Plaintiff's failure to provide any sufficient justification for this extended period of inactivity, Plaintiff has failed to carry his burden in establishing that there is a causal relationship between the alleged extraordinary circumstances claimed and the lateness of the filing. *See Hizbullahankhamon*, 255 F.3d at 75 (quotation omitted). Even though Plaintiff's legal materials may not have been shipped to him from Upstate C.F. until June of 2011, Plaintiff has not shown that he made any effort to file his complaint without them, which further evinces a lack of diligence. *See Padilla v. United States*, No. 09 Civ. 1142, 2002 WL 31571733, *4 (S.D.N.Y. Nov. 19, 2002) (citation omitted).

Finally, Plaintiff's assertion that he did not know that he may have a due process claim until February of 2011 when another inmate told him about his potential claim is unavailing. It is well established that ignorance of the law and legal procedure does not constitute an extraordinary circumstance warranting equitable tolling. *See Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (citing cases). In light of the foregoing, the Court finds that Plaintiff has failed to present any evidence to warrant the application of equitable tolling to the present matter.

### III. CONCLUSION

After carefully considering Magistrate Judge Baxter's Report-Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's February 4, 2013 Report-Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion to dismiss and for summary judgment (Dkt. No. 24) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 26, 2013
Albany, New York

Mae A. D'Agostino
U.S. District Judge